Troy E. MASKERINES, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted Aug. 27, 2010.

Decided Jan. 3, 2011.

Frank R. Cori, Orwigsburg, for Petitioner.

Shawn J. Jayman, Assistant Counsel, Harrisburg, for Respondent.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Troy Maskerines (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) denying him benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] On appeal, Claimant argues that the Board erred in denying him benefits because it did not require Draka Cableteq USA, Inc. (Employer) to prove that Claimant's conduct, which violated Employer's no-drug work rule and a last chance agreement, directly affected his workplace performance.

Employer fired Claimant in September 2009 after Claimant admitted he had possessed marijuana while off-duty and off Employer's premises. (Board Op., Findings of Fact (FOF) ¶¶ 7–8.) On December 23, 2009, the Scranton Unemployment Compensation Service Center (Service Center) determined that under Section 3 of the Law,[2] Claimant was not ineligible for benefits. The Service Center found that Claimant's possession of illegal drugs was not work-related. (Notice of Determination, Findings of Fact ¶¶ 2–3.) Employer appealed the Service Center determination, and a hearing was held by a Referee on February 5, 2010. The Referee applied Section 402(e) of the Law and denied Claimant benefits. (Referee's Decision/Order at 2.) The Referee found that Claimant had deliberately violated not only a last chance agreement between Claimant and Employer, but also Employer's rule forbidding employees from possessing illegal drugs. (Referee's Decision/Order, Finding of Fact ¶ 2.)

Claimant appealed to the Board. The Board made the following findings of fact:

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2. 43 P.S. § 752.

1. The claimant was last employed as an extruder operator by Drake [sic] Cableteq USA[,] Inc. from April 2004 and his last day of work was September 25, 2009.

2. On April 9, 2008, the claimant signed a last chance agreement with the employer. The claimant agreed that he would abstain from the use of illegal or alcoholic substances. The claimant also agreed that he would comply with all the provisions of the employer's drug and alcohol policy.

3. The employer's drug and alcohol policy prohibits the manufacture, distribution, dispensation, possession, sale or use of illegal drugs by employees.

4. The employer's drug and alcohol policy also prohibits an employee being convicted under any criminal drug statute for a violation in the workplace or outside the workplace.

5. The claimant was aware or should have been aware of the employer's policies.

6. In September 2009, the claimant was arrested for a small amount of marijuana and participated in the "ARD" program.

7. On September 25, 2009, the claimant admitted to the human resource manager he was in possession of a small amount of marijuana with the intent to sell.

8. The claimant was discharged for violating the last chance agreement and for violating the employer's drug and alcohol policy.

(FOF ¶¶ 1–8.)

The Board applied Section 402(e) to these findings of fact and determined that Claimant was ineligible for benefits. (Board Op. at 3.) The Board concluded that Claimant had committed willful misconduct because he deliberately violated Employer's no-drug work rule by having illegal drugs in his possession. (Board Op. at 2–3.) Claimant timely appealed to this Court.[3]

The issue in this case is whether the Board committed an error of law by failing to require that Employer, who discharged Claimant for conduct that occurred outside the workplace and violated Employer's no-drug work rule and a last chance agreement, bear the burden under Section 402(e) of proving that the conduct in question directly affects Claimant's workplace performance.

Initially, we note that Claimant does not argue that he did not violate Employer's no-drug work rule, which prohibits, *inter alia*, the possession of illegal drugs.[4] (FOF ¶ 3.) Claimant, likewise, does not assert that he did not violate the last chance agreement between himself and Employer, which not only required Claimant to abstain from the use of illegal drugs and alcohol, but also required Claimant to comply with Employer's no-drug work rule. (FOF ¶ 2.) The last chance agreement specifically indicated that any violation of that agreement, which would include a violation of Employer's no-drug

---

**3.** In unemployment compensation cases, our review "is limited to determining whether [a c]laimant's constitutional rights were violated," whether the Board's findings of fact are supported by substantial evidence, and whether an error of law was committed below. *Wagner v. Unemployment Compensation Board of Review*, 965 A.2d 323, 325 n. 5 (Pa.Cmwlth. 2009).

**4.** Employer's no–drug work rule provides: "[t]he manufacture, distribution, dispensation, possession, sale or use of illegal drugs by employees is prohibited." (Drug–Free Workplace and Alcohol Abuse Policy at 1, Ex. E–1.)

work rule, would result in Claimant's immediate discharge. (Last Chance Agreement at 2, Ex. E–5.) Finally, Claimant has not challenged the reasonableness of Employer's no-drug work rule or the last chance agreement.

■ For these reasons, we believe the current case is similar to *Szostek v. Unemployment Compensation Board of Review,* 116 Pa.Cmwlth. 7, 541 A.2d 48 (1988). In *Szostek,* the claimant worked as a meter reader for Philadelphia Gas Works. *Id.* at 49. The claimant took a leave of absence to undergo drug rehabilitation. *Id.* at 49–50. After completing the rehabilitation, he returned to work, on the condition that he remain drug-free. *Id.* at 50. One month later, the claimant admitted to his employer that he had smoked marijuana. *Id.* The claimant was discharged for violating the condition that he remain drug-free after returning to work. *Id.* at 49–50. The Board denied unemployment compensation benefits to the claimant pursuant to Section 402(e). *Id.* at 49. On appeal to this Court, the claimant argued that his off-the-job drug use did not disqualify him from benefits and that no evidence suggested that his "marijuana use affected his job performance." *Id.* at 51. This Court rejected the claimant's argument:

> [T]here is an *admission* by [the c]laimant to the [e]mployer's medical director that [the c]laimant smoked marijuana. It is apparent from the record that [the e]mployer discharged [the c]laimant for

violation of a specific condition of employment, *i.e.,* drug use when [the c]laimant had agreed to remain drug-free. Hence, findings of fact pertaining to the nature of [the c]laimant's drug use and its direct effect upon job performance are not required under the circumstances.

*Id.* at 51 (emphasis in original). The present case is analogous to *Szostek.* Here, Claimant agreed, as part of his last chance agreement, to abide by Employer's no-drug rule, which forbade employees from possessing drugs. Claimant then admitted to one of Employer's personnel that he had possessed marijuana. Claimant argues that Employer should have been required to show that Claimant's marijuana possession adversely affected his ability to perform his assigned duties. But because Claimant violated a specific condition of his employment specified in the last chance agreement, Employer was not, under *Szostek,* required to show that Claimant's marijuana possession directly affected his job performance.

■ Claimant argues that when an employee is fired for off-premises conduct, the employer bears the burden of proving that the off-premises conduct had "a direct impact on the employee's work performance." (Claimant's Br. at 4–5.) We disagree. Where an employer seeks to deny a discharged employee unemployment compensation benefits *pursuant to Section 3* of the Law,[5] the employer bears the

---

5. Section 3 states:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the

spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Leg-

burden of showing that the alleged misconduct directly affects an employee's ability to perform his or her assigned duties. *Gillins v. Unemployment Compensation Board of Review,* 534 Pa. 590, 597, 633 A.2d 1150, 1154 (1993). Where an employer seeks to deny a discharged employee unemployment compensation benefits for a work rule violation *pursuant to Section 402(e),*[6] the employer must prove only that the work rule existed and that the employee violated it. *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 123, 703 A.2d 452, 456 (1997). Because Claimant was discharged for a work rule violation, the Board applied Section 402(e) to the case, and Employer was not required to show that Claimant's possession of marijuana off-premises directly affected Claimant's job performance. Section 3 and Section 402(e) are not parallel legal theories, but are independent bases on which to deny an employee unemployment compensation, and the legal analysis under each section is different. *Burger v.*

*Unemployment Compensation Board of Review,* 569 Pa. 139, 144–46, 801 A.2d 487, 491–92 (2002); *Gillins,* 534 Pa. at 602, 633 A.2d at 1156 (1993).

■ This Court has applied Section 402(e) to off-premises conduct to hold that claimants were ineligible for benefits.[7] For example, in *Nevel v. Unemployment Compensation Board of Review,* 32 Pa. Cmwlth. 6, 377 A.2d 1045 (1977), the claimant worked as a stock clerk for the Pennsylvania Liquor Control Board. *Id.* at 1046. While off-duty, the claimant bought liquor in New York and, in violation of the Liquor Code,[8] transported it into Pennsylvania. *Id.* at 1046–47. The Board denied the claimant unemployment compensation per Section 402(e). *Id.* The claimant appealed to this Court. We held that the claimant's conduct was work-connected and, thus, disqualifying under Section 402(e), even though the conduct took place in the claimant's own car while the claim-

---

islature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752.

6. Section 402(e) states:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act. . . .

43 P.S. § 802(e).

7. *See Semon v. Unemployment Compensation Board of Review,* 53 Pa.Cmwlth. 501, 417 A.2d 1343 (1980) (holding that the claimant's re-

fusal to seek psychiatric help as requested by employer constituted willful misconduct under Section 402(e), even though the claimant's refusal to comply with the request occurred off-duty); *Caruso v. Unemployment Compensation Board of Review,* 122 Pa. Cmwlth. 351, 551 A.2d 1167, 1169–70 (1988) (holding that a claimant's conduct was work-related and, thus, disqualifying under Section 402(e) even though the conduct occurred off-duty at 3 a.m. at the claimant's boss's house); *Williams v. Unemployment Compensation Board of Review,* 141 Pa.Cmwlth. 667, 596 A.2d 1191, 1192 (1991) ("there is no requirement under section 402(e) that an employee's work-related misconduct occur on the employer's premises or precisely while on duty"). *But cf. Gallagher v. Unemployment Compensation Board of Review,* 36 Pa. Cmwlth. 599, 388 A.2d 785, 787–88 (1978) (holding that employee's off-duty conduct while on employer's premises was unconnected to work and, thus, did not fall under Section 402(e)).

8. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–10–1001.

ant was off-duty. *Id.* at 1047. We held that an employer may reasonably expect its employees to obey statutes that the employer has a duty to enforce. *Id.* "There is no requirement that an employe's misconduct occur on the employer's premises and/or while on duty. . . . In deciding that [the c]laimant's actions were 'work-connected,' we reject [the c]laimant's argument that Section 3 of the Law, 43 P.S. § 752, is applicable." *Nevel,* 377 A.2d at 1047 (citation omitted). Accordingly, contrary to Claimant's assertions, the fact that Claimant's conduct occurred off-premises does not, in and of itself, determine what burden Employer bears in seeking to deny Claimant unemployment compensation.

Claimant cites *Unemployment Compensation Board of Review v. Derk,* 24 Pa. Cmwlth. 54, 353 A.2d 915 (1976), to support his argument that off-premises conduct must adversely affect workplace performance in order to constitute willful misconduct. In *Derk,* the claimant was a school bus driver who was discharged for "an unspecified 'morals charge.'" *Id.* at 916. The board denied him benefits on the basis of Section 3. *Id.* at 917. This Court reversed:

> In order to deny compensation under Section 3 of the Act, more is needed than mere evidence of an *arrest* for a crime. The employer must present some evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior and which *directly* reflects upon his ability to perform his assigned duties. Of course, no proof of criminal conviction is necessary. The employer need only produce evidence that would have established fault on the part of the employee which would be incompatible with his work responsibilities.

*Id.* at 917 (emphasis in original). *Derk* is inapposite to the present case because *Derk* is a Section 3 case, not a Section 402(e) case. As noted above, Section 3 and Section 402(e) are separate bases upon which unemployment compensation may be denied. Therefore, a Section 3 case such as *Derk* does not control the present case, which the Board decided under Section 402(e).

In addition to *Derk,* Claimant relies on two Section 402(e) cases that cite *Derk;* however, both cases are distinguishable from the current matter. In *Unemployment Compensation Board of Review v. Vereen,* 29 Pa.Cmwlth. 252, 370 A.2d 1228, 1230 (1977), the claimant was discharged for allegedly misappropriating his employer's merchandise. Even though he agreed to make restitution of $200 to his employer, the claimant steadfastly maintained that he was innocent. *Id.* Nevertheless, the referee denied the claimant benefits per Section 402(e), and the Board denied his appeal. *Id.* at 1229. On appeal to this Court, the claimant argued that the referee had failed to base a finding of fact on substantial evidence. *Id.* at 1230. This Court agreed with the claimant and held that evidence of the claimant's arrest was not enough to sustain a determination that the claimant had committed willful misconduct. *Id.* at 1231. The *Vereen* court cited *Derk,* a Section 3 case, in adjudicating the claimant's rights under Section 402(e). *Id.*

In the present case, Claimant has not maintained his innocence. He admitted to Employer's human resource manager that he had possessed marijuana and intended to sell it. (FOF ¶ 7.) Unlike the claimant in *Vereen,* Claimant does not contend that the Board's findings, including the findings that Claimant violated Employer's no-drug work rule and last chance agreement, were not based on substantial evidence. Moreover, *Vereen* cited *Derk,* not for the princi-

ple that under Section 402(e) the employer must show that off-duty conduct directly affected the claimant's work performance, but instead for the principle that "more is needed than mere evidence of criminal arrest before the Board may deny compensation benefits." *Id.* at 1231. In the present case, there *is* more than Claimant's arrest: Claimant admitted to Employer that he, in fact, had possessed marijuana. Lastly, there is no indication in *Vereen* that the claimant and employer had entered into a last chance agreement. In the present case, however, such an agreement did exist, and the Board found that Claimant was discharged for violating it. (FOF ¶ 8.) The Board also found that Claimant had been discharged for violating Employer's work rule. (FOF ¶ 8.) No such rule violation occurred in *Vereen.* Because of these distinctions, *Vereen* is inapplicable here.

Second, Claimant relies upon *Altemus v. Unemployment Compensation Board of Review,* 681 A.2d 866 (Pa.Cmwlth.1996), in which the claimant was discharged from his position as a school teacher after several instances of tardiness, unexcused absences, and several drunk driving convictions. *Id.* at 868–69. The employer fired the claimant "for immorality and persistent neglect of duties." *Id.* at 869. The Board denied the claimant unemployment compensation benefits "concluding that Claimant's DUI convictions manifested a disregard for a standard of behavior which Employer could rightfully expect of a professional teacher." *Id.* at 869. This Court affirmed the Board on the basis of Section 402(e), citing *Derk* for the principle that "connected with the employee's work" "means that the employee's behavior must

directly reflect upon the employee's ability to perform assigned duties." *Id.* at 869.

*Altemus* is distinguishable. Whereas the *Altemus* claimant was denied benefits on the basis that he disregarded standards of behavior that an employer may rightfully expect from an employee, Claimant here was denied benefits for violating Employer's work rule. These are two distinct forms of willful misconduct.[9] *Altemus* also is distinguishable in that it did not involve a last chance agreement. Moreover, to the extent *Altemus* appears to conflate the Section 3 and Section 402(e) standards, we reiterate the Pennsylvania Supreme Court's observations that Section 3 and Section 402(e) are not parallel legal theories, that the two sections are independent bases on which to deny an employee unemployment compensation, and that the legal analysis under each section is different. *Burger,* 569 Pa. at 144–46, 801 A.2d at 491–92; *Gillins,* 534 Pa. at 602, 633 A.2d at 1156 (1993). Because of these distinctions, *Altemus* does not control the present case.

Our analysis in this case is not inconsistent with two Pennsylvania Supreme Court cases, *Gillins* and *Burger,* which are distinguishable. In *Gillins,* one of the claimants, Gibbs, was discharged for violating his employer's work rule that prohibited employees from being arrested for off-duty drug activity. *Gillins,* 534 Pa. at 595, 633 A.2d at 1153. The Supreme Court held that, as a matter of law, evidence of an off-duty arrest without more—i.e., without any proof of the underlying charges—was not enough to establish disqualifying willful misconduct under Section 402(e). *Gil-*

9. *Compare O'Keefe v. Unemployment Compensation Board of Review,* 18 Pa.Cmwlth. 151, 333 A.2d 815, 818 (1975) (analyzing whether the claimant's conduct disregarded the "standards of behavior which an employer can rightfully expect from his employe") *with Du-* quesne Light Co. v. Unemployment Compensation Board of Review, 167 Pa.Cmwlth. 650, 648 A.2d 1318, 1320–21 (1994) (considering whether the claimant deliberately violated the employer's work rule).

*lins,* 534 Pa. at 603, 633 A.2d at 1157. The present case is distinguishable in two significant ways. First, Employer's no-drug rule does not forbid mere arrests—it forbids "[t]he manufacture, distribution, dispensation, possession, sale or use of illegal drugs." (Drug–Free Workplace and Alcohol Abuse Policy at 1, Ex. E–1.) Second, there was more in the present case than simply an off-duty arrest; Claimant admitted that he possessed marijuana. (FOF ¶ 7.) The fault involved when an individual is arrested for drug possession and then admits that he was in possession is different from the fault involved when an individual is arrested for off-duty conduct, and there is no other evidence that suggests culpability for the suspected infraction.[10]

In *Burger,* the claimant was discharged for off-duty drug use where, although she admitted using marijuana at home every evening, the claimant denied ever reporting to work directly after using marijuana. *Burger,* 569 Pa. at 141, 801 A.2d at 489. The claimant's employer had a work policy that prohibited employees *from reporting to work or working under the influence* of alcohol or illegal drugs. *Id.* at 142, 801 A.2d at 489. The claimant was found ineligible for benefits pursuant to Section 402(e) of the Law. *Id.* at 142, 801 A.2d at 489–90. Our Supreme Court reversed, holding that off-duty misconduct becomes work-connected and, thus, properly analyzable under Section 402(e) if "it extends to performance on the job." *Id.* at 144, 801 A.2d at 491. The Supreme Court did not specify whether "extends to performance on the job" under Section 402(e) requires a different showing than "directly affects the claimant's ability to perform his [or her] assigned duties" under Section 3, 43 P.S. § 752. However, the Supreme Court indicated, *inter alia,* that "had [the c]laimant appeared at work under the influence of marijuana ingested off-duty, [a violation of the employer's work policy], [Section] 402(e) would apply." *Burger,* 569 Pa. at 144, 801 A.2d at 491. The Supreme Court further stated that there was no evidence establishing that the claimant's drug use affected her work performance. *Id.* at 145, 801 A.2d at 491. Here, Claimant, unlike the claimant in *Burger,* violated his Employer's work rule, which does not contain the "reporting to work or working under the influence" language that restricted the scope of the employer's no-drug policy in *Burger.* Claimant violated Employer's work rule by possessing illegal drugs, a fact Claimant admitted. Moreover, there was no mention of a last chance agreement in *Burger,* in contrast to this case. For these reasons, *Burger* is distinguishable.

■ When an employee is discharged for off-the-job conduct that violates a work rule and a last chance agreement, Section 402(e) does not require the employer to show that the off-the-job conduct directly affected the claimant's job performance. *Szostek,* 541 A.2d at 51. Accordingly, the Board did not commit an error law when it did not require Employer to prove that Claimant's off-premises possession of marijuana directly affected his work performance. We affirm the Board's order.

### ORDER

NOW, January 3, 2011, the order of the Unemployment Compensation Board of

---

**10.** Notably, *Gillins* was remanded to consider the employer's argument that Gibbs had entered a nolo contendere plea in the criminal proceeding involving his drug arrest and this plea supported a finding of willful misconduct. *Gillins,* 534 Pa. at 603 n. 6, 633 A.2d at 1157 n. 6; *Pennsylvania Power Co. v. Unem-* *ployment Compensation Bd. of Review,* 135 Pa.Cmwlth. 157, 579 A.2d 1030, 1032 (1990), *rev'd* 534 Pa. 590, 633 A.2d 1150 (1993). We can discern no reason the Supreme Court remanded the case for reconsideration unless the nolo contendere plea could have been disqualifying under Section 402(e).

Review in the above-captioned matter is hereby **AFFIRMED.**